eFiled in the Office of Clerk of Court, Orange County Florida 2012 Oct 11 05:08 PM Lydia Gardner

# License Plate Look-Up Agreement

This License Plate Loo-Up Agreement ("**Agreement**") is made this 14th day of February 2012 by and between Sensys America, Inc., a Delaware corporation with a business address at 80 SW 8th Street, 20th Floor, Miami, FL 33130 ("**Sensys**") and Brekford Corp., a Maryland corporation with a business address at 7020 Dorsey Road, Bldg C, Hanover, MD 21076 ("**Brekford**"). Sensys and Brekford are sometimes referred to herein individually as a "**Party**," and collectively as the "**Parties**."

## BACKGROUND

**WHEREAS**, Brekford has ordered thirty (30) mobile speed enforcement systems pursuant to a purchase order dated November 3, 2011; and

**WHEREAS**, the aggregate purchase price for the systems was $1,260,000, of which $1,000,000 was payable in cash and the balance of $260,000 (the "**Purchase Credit**") remains payable in accordance with this Agreement; and

**WHEREAS**, Brekford is a party to that certain Nlets Strategic Partner Agreement effective May 23, 2011 (the "**Nlets Agreement**") pursuant to which Brekford can avail itself of certain information provided by Nlets.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the Parties agree as set forth below. The Background to this Agreement is hereby incorporated into the Agreement as if fully restated herein.

1    **Provision of License Plate Look Up Services**

Sensys will transmit license plate and state information to Brekford in a format designate by Brekford and Brekford will return to Sensys Nlets Information for such license plates (or state that such information is not available) with respect to each such license plate number within 72 business hours. The information provided shall include, at minimum, (a) registered owner, (b) registered owner address, (c) vehicle make, (d) vehicle year, and (e) registered owner's gender and drivers license number. Brekford shall not be required to obtain or provide any information that is not available through Nlets.

2    **Fees and Manner of Payment**

2.1    Brekford will assume all additional fees and monthly charges charged by Nlets as well as will not charge Sensys any set-up fees.

2.2    Brekford shall invoice Sensys on a monthly basis for all such look-ups and Sensys will apply the amount of such invoice against the outstanding Purchase Credit until the Purchase Credit equals zero. In the event that Brekford fails or refuses for any reason to provide the look-ups and such


EXHIBIT "A"

failure continues for a period of 10 business days, the unapplied balance of the Purchase Credit shall be immediately due and payable to Sensys.

2.3    Brekford shall charge Sensys $0.95 per look-up for record up to 4,000 per month, $0.70 per look-up for records from 4,001 to 12,000 per month, and $0.59 per look-up for records from 12,001 up to 22,000 per month.   Brekford will not be required to provide look-ups in excess of 22,000 per month.

**3     Nlets Agreement; Confidentiality**

Sensys acknowledges the terms and conditions of the Nlets Agreement.  Sensys covenants and agrees that it will neither take nor permit any action contrary to the Nlets Agreement.  Sensys further covenants and agrees that it will keep all data and information provided by Brekford in connection with this Agreement strictly confidential and shall use such information only for its intended purpose.  Sensys shall be entitled to state in any marketing or Proposal substantially the following: "Sensys America contracts Nlets services through an Nlets Partner and has requisite access to information for all photo enforcement purposes.  If awarded the contract or as a condition to being awarded the contract, Sensys America will identify the Nlets Partner and provide the City with access to relevant personnel to confirm suitability.

**4     Term and Termination**

This Agreement shall be effective as of the date first written above and shall terminate on the first to occur of (a) satisfaction of the entire Purchase Credit (in accordance with paragraph 2.2 or by payment in cash, (b) failure or refusal of Brekford to provide the look-up services specified in paragraph 1 for any reason for a period of more than 10 business days, or (c) the third anniversary of the effective date of this Agreement.   Upon termination, the entire unpaid balance of the Purchase Credit is immediately due and payable.  After termination, the unpaid balance of the Purchase Credit shall accrue interest at the lesser of ($x$) 1% per month, or ($y$) the maximum interest rate permitted by law.

**5     Notice**

All notices, written instructions or other documents deliverable to any of the parties hereto pursuant to the terms and conditions of this Escrow Agreement shall be validly given when hand-delivered or sent by a courier or express service guaranteeing overnight delivery to the address of each Party set forth in the introduction to this Agreement.

**6     Relationship of Parties**

The Parties to this Agreement are independent of one another and this Agreement does not create a partnership, joint venture, employment, agency or other relationship.  Neither Party has the authority to bind the other.  Each Party shall be

solely and exclusively responsible for its own taxes, licensing, qualification, insurance and the like.

**7        Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida notwithstanding the conflict of laws principles thereof.

**8        Headings**

The headings contained in this Agreement are provided for convenience only and form no part of this Agreement and shall not affect the construction or interpretation of this Agreement.

**9        Assignment; Successors and Assigns**

This Agreement may not be assigned to any third party without the express prior written consent of the non-assigning party. In the event that this Agreement is assigned to any third party for any reason (including by operation of law), Brekford may, at its sole option, continue to provide services in accordance with this Agreement or to pay the balance of the Purchase Credit in cash and thereby terminate this Agreement. *Under no circumstances shall Brekfrod ever be required by this Agreement to provide Nlets data or information to any third party.* This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective legal representatives, successors and assigns.

**10       Entire Agreement**

This Agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof, and this Agreement supersedes and replaces any agreement or understanding that may have existed between the parties prior to or contemporaneously with the date hereof in respect of the such subject matter expressly set forth herein.

**11       Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, the Parties have set their hands as of the date first written above.

**SENSYS AMERICA, INC.**

By:

Name:   Carlos Löfstedt

Title:   President and CEO

**BREKFORD CORP.**

By:

Name:   Maurice R. Nelson

Title:   Managing Director, Automated Traffic Enforcement Group